**POLARIS INVESTMENT MANAGEMENT CORP., et al., Relators,**

v.

**Honorable Amado ABASCAL, Judge of the 365th Judicial District Court of Maverick County, Texas, Respondent.**

No. 04–94–00684–CV.

Court of Appeals of Texas, San Antonio.

Nov. 18, 1994.

---

Morton L. Susman, Steven R. Selsberg, Gregory S. Coleman, Weil, Gotshal & Manges, Houston, Dennis J. Block, Joseph S. Allerhand, Weil, Gotshal & Manges, New York City, Seagal V. Wheatley, Donald R. Philbin, Jr., Wheatley, Campagnolo & Sessions, San Antonio, Mike A. Hatchell, Ramey & Flock, P.C., Tyler, for appellants.

Pat Maloney, Sr., Law Offices of Pat Maloney, P.C., San Antonio, for appellees.

Before BUTTS, PEEPLES and RICKHOFF, JJ.

ON RELATOR'S MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS

## SUBSTITUTED OPINION

RICKHOFF, Justice, concurring.

Although the result is contrary to my sense of justice, current law and Texas Supreme Court guidelines on venue and mandamus constrain us to deny leave to file the relators' petition for writ of mandamus. Under our rules of procedure we may not grant leave to file or even maintain the status quo with temporary relief unless we are "of the tentative opinion that relator is entitled to the relief sought." TEX.R.APP.P. 121(c).[1] Present mandamus guidelines prevent us from granting the relief. I write to alert the Texas Supreme Court to the danger of not modifying the mandamus and venue rules [2]—especially where a trial court's exercises of discretion implicate due process.

Maverick County, Texas may be the most inconvenient forum possible for this securi-

---

**1.** We recognize that this problem is somewhat obviated in proposed rules, but the Texas Supreme Court has not yet passed upon them.

**2.** The federal court to which the defendants attempted to remove some of the cases at issue on diversity grounds remanded them because it found the severance order ambiguous. In so doing, however, the Federal Court stated: "[T]he state rules of procedure as presently constituted appear to allow the maneuvers employed by

ties fraud case.[3] None of the defendants, and only one of over 2,000 potential plaintiffs, resides there.[4] Before filing suit, the only Maverick County resident had already signed an arbitration agreement to resolve his claim without trial in a claims resolution process established under the supervision of the United States District Court in Washington, D.C. and the SEC. By clever pleading of an unresolved "fraud in the inducement" claim, the plaintiffs' counsel got a favorable venue ruling.

Plaintiff's counsel used seminars to recruit over two thousand claimants from around the nation to reject arbitration and intervene in his suit. Counsel essentially told them that Maverick County was the most biased venue in the nation. One plaintiffs' counsel, while soliciting New York plaintiffs to join the suit, contrasted the Texas judge with a New York judge as follows:

> Some bad judge, I won't say bad judge, a judge in New York is basically finding against investors saying you should have known the second you bought this thing that it was fraudulent, whether you could have known or no. That is why these folks from Texas *have got a judge that is probably not going to make that finding.* That is one reason to consider joining the Texas action. [emphasis added]

Another plaintiffs' counsel described the forum to prospective plaintiffs as follows:

Our case is pending in Eagle Pass, Texas. I've stayed very close to Eagle Pass, Texas because I originally, I got the largest verdict in the history of the United States there, and it didn't take me long to realize that's a friendly conclave. They're nice to people who've been overreached. The judge understands things and we understand him and the jurors are, are bountiful and we just like it there.... of course Eagle Pass is a town of 30,000 people, so you can appreciate that the docket can accommodate a lot more plaintiffs....

....

We are anticipating that because we are in a good venue, we have a number of plaintiffs, we would anticipate they would like to enter into very serious settlement negotiations on the most favorable terms to you.

The plaintiffs' "settlement brochure" explained that Eagle Pass is predominantly Hispanic, with approximately 40 percent unemployment, the second poorest county in the entire country, with many migrant workers who travel in the summer. Regarding this information, the brochure concluded:

> [W]ith these cases proceeding in November and December and January and all of the months throughout 1995 and 1996, an adequate jury panel certainly will be available. In the past, the attitude of individual jurors in Eagle Pass identifies compassionately with deserving victims and sharply against corporate wrongdoing and fraud.

plaintiffs. Depending on whose ox is being gored, one might argue the rules should be changed. There are legislative and rule-making processes to accomplish that result." Because mandamus is allowed only for a *clear* abuse of discretion, we must interpret the order as a severance, since the blanket denial of discovery before trial of the first bundle of claims, for an unsevered portion of the case would otherwise be an abuse of discretion.

**3.** Almost all of the parties, transactions, and documents in this case are outside the county, and most of the subject matter is from outside Texas, but we cannot tell from the record before us whether the trial court overruled a motion apparently filed to dismiss for forum non conveniens. The forum non conveniens issue in Texas ties in directly with the venue law. As Judge Peeples stated in a New York Stock Exchange

dispute that was forced to trial in Texas, "... if it remains the law, we will be not only the courthouse for the world but the laughingstock of the legal world as well." *'21' Int'l Holdings v. Westinghouse Elec. Corp.,* 856 S.W.2d 479, 486 (Tex. App.—San Antonio 1993, no writ) (Peeples, J., concurring).

**4.** One venue fact the original plaintiff eventually alleged was that he was fraudulently induced to agree to participate in the claims resolution/arbitration process. Defendant Prudential agreed in its "no fault" settlement with the SEC to pay all valid claims, and must submit claims to arbitration if its settlement with the investor is unsatisfactory. In at least one seminar, plaintiffs' counsel told investors they could not sue if they had signed up for arbitration (as the original plaintiff had).

While only one plaintiff, with a questionable right to sue, resided in Maverick County, the trial judge determined venue and allowed all to intervene.[5] After the judge overruled the challenge to venue, the plaintiffs added additional defendants. Due to an unfortunate quirk in current Texas law, the trial court could not even hear their subsequent venue challenge. The court then severed or separated the intervenors into dozens of independent bundles of lawsuits against the same defendants.[6] Venue can only be proper for one of those lawsuits, and if the record after trial indicates no fraudulent inducement to join the arbitration agreement, there may be no basis for venue in any of the suits.

The court also allowed plaintiffs' counsel to select the order of trial. The bundles scheduled for trial first include claims such as that of a Roman Catholic priest, widows, etc. Finally, the court forbade discovery from plaintiffs whose trial dates are not set even though it is relevant to the defense of cases scheduled for trial.

Now, defendants face the first trials without complete discovery, and then confront collateral estoppel issues in later trials in which defense theories may be impaired. They must endure years of expensive litigation, multiple appeals, and financial exposure plaintiffs' counsel suggested might be in the billions of dollars in a forum to which the case has no connection.

Trial judges should have great discretion in decisions on venue, intervention, severance, and scheduling discovery. At the time of the original venue decision, the trial court had no discretion to change the venue because venue appears to have been technically proper when the court decided the issue. *See Wilson v. Texas Parks & Wildlife Dept.*, 886 S.W.2d 259, 260 (1994). The aggregate result of the discretionary decisions in this case, however, may involve a denial of the defendants' substantive rights.[7]

Trial courts' discretion should not be unlimited merely because they have it. This case demonstrates that the standard for abuse of discretion should not only include exercising discretion where the court has none. The egregious use of discretion in the present case illustrates that the standard should incorporate some power to review abuse of the discretion that trial courts do have. The broad discretion the Texas Supreme Court has traditionally granted trial judges does not allow mandamus relief for such abuse, even where the abuse wreaks serious irreparable injury. Trial courts' need broad discretion, not unlimited discretion.

Mandamus is, and should remain, an extraordinary proceeding. I have no desire to be involved in incidental rulings, but appellate judges should be trusted to recognize exercises of discretion that irremediably deprive litigants of significant substantive rights without any objective justification. There should be a limit to our restraint.

Similar results have brought national attention to allegations that justice is for sale in Texas. Why would a trial judge invite thousands of litigants who have no connection with his county to consume all the docket time and virtually the entire jury pool of the county—unless litigation is considered a

---

5. The trial court heard venue and the intervention before summarily determining arbitrability of the claims before venue, or even before setting cases for trial (or even discuss whether the plaintiffs set for trial signed arbitration agreements). *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex.1992). Although the claim asserting the arbitration agreement is fraud in the inducement, it would contravene the purpose of the arbitration statutes not to apply the rationale in Tipps. As far as I can tell, the trial court still has not addressed it.

6. While the federal court to which the defendants attempted to remove part of the case on diversity grounds could not determine from the ambiguous order whether the cases were severed, or merely ordered to trial separately, we must read the order as a severance. It is not clear from the record that the judge abused his discretion by refusing discovery on part of a case while sending another part of the case to trial without full discovery.

7. Further, the extraordinary litigation expense that this multiplicity of trials occasions should make this case an exception to the general rule that mere expense of litigation does not render appeal an inadequate remedy for these "incidental" rulings. *See, e.g., Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305–07 (Tex.1994); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990).

new source of revenue—and why should the county's jurors be subjected to litigation of no interest to the region?[8] The number of litigants here could conceivably outnumber the jury pool. The trial court's rulings simply make no practical sense. Something is seriously amiss when plaintiffs or defendants are allowed to conduct such appalling forum shopping and tactical maneuvering.

Allowing these cases to proceed will make foreign litigation a growth industry in South Texas. We will preside over a prime forum of choice for major litigation with national impact, but with little connection to our region. Searching for a South Texas victim will become *de rigueur.*

South Texas lawsuits with improper venue before trial should not remain in that venue. Venue decisions should not be classified as "incidental" rulings, and clear venue errors should be corrected before extensive litigation.[9] Transfer to a proper venue need not interfere with "orderly trial proceedings" or cause "constant interruption of the trial process by appellate courts." *See Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969) (addressing concerns of trial interruptions and disruption), *cert. denied,* 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970). To the contrary, assigning cases to a proper venue before trial allows orderly trial proceedings. Currently, litigants face a convoluted trial, appeal, and remand for a whole new trial in a proper venue—if the litigants and their resources are not exhausted before the "real" trial on the merits. *See generally, Ruiz v.*

*Conoco, Inc.,* 868 S.W.2d 752 (Tex.1993) (determination and review of venue).

Here, the plaintiffs chose an inconvenient forum, expecting partiality and favorable discretionary rulings. We hope the Texas Supreme Court will examine this case carefully and craft a solution for the due process implications of this case, and to prevent similar abuses in the future.

---

8. Venue rules first developed because English jurors were considered to be witnesses to events occurring in their county.

9. Venue is unlike personal jurisdiction because it can be fixed before trial at a great savings for litigants and our court system. A judge will normally have no discretion in the venue decision where the venue facts are clear and undisputed. On the record the defendants submitted with their petition for leave, we unfortunately cannot determine whether the Petitioners preserved the venue issue after the severances. *See United States Fire Ins. Co. v. Alvarez,* 657 S.W.2d 463, 470 (Tex.App.—San Antonio 1983, no writ) (failure to timely raise venue when venue facts in pleadings no longer support venue). In any case, appellate courts generally may not issue mandamus to correct erroneous venue decisions.

*See, e.g., Cone v. Gregory,* 814 S.W.2d 413, 414 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Tenneco, Inc. v. Salyer,* 739 S.W.2d 448, 449–50 (Tex.App.—Corpus Christi 1987, orig. proceeding); *MacWhyte Co. v. Gonzalez,* 688 S.W.2d 205, 207 (Tex.App.—El Paso 1985, orig. proceeding). There are exceptions. *See, e.g., Henderson v. O'Neill,* 797 S.W.2d 905, 905 (Tex.1990) (The trial court did not give party 45 days notice of the venue hearing.); *Proffer v. Yates,* 734 S.W.2d 671, 673 (Tex.1987) (mandatory venue under Family Code § 11.06 enforceable by mandamus); *Dorchester Master Ltd. Partnership v. Anthony,* 734 S.W.2d 151, 152 (Tex. App.—Houston [1st Dist.] 1987, orig. proceeding) (An order that transferred venue after plenary power expired was void.).