**MASONITE CORPORATION, Abitibi–Price Corporation, and MG Building Materials, Inc., Relators,**

**v.**

**The Honorable Ricardo H. GARCIA, Respondent.**

**MASONITE CORPORATION, Abitibi–Price Corporation, and MG Building Materials, Inc., Appellants,**

**v.**

**Victor ARREDONDO, et al., Appellees.**

**MASONITE CORPORATION, Abitibi–Price Corporation, and MG Building Materials, Inc., Relators,**

**v.**

**The Honorable Ricardo H. GARCIA, Respondent.**

**MASONITE CORPORATION, Abitibi–Price Corporation, and MG Building Materials, Inc., Appellants,**

**v.**

**Laura ADAMS, et al., Appellees.**

**Nos. 04–97–00256–CV, 04–97–00284–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 13, 1997.

G. Luke Ashley, Dallas, Gregory S. Meece, Patricia A. Nolan, Thompson & Knight, P.C., James Edward Maloney, Claudia Wilson Frost, Jennifer M. Smith, Macey Reasoner Stokes, Baker & Botts, L.L.P., Houston, J.G. Adami, Jr., Warburton, Adami, McNeill & Paisley, P.C., Alice, Rebecca R. Kieschnick, Meredith, Donnell & Abernethy, Corpus Christi, for Appellant.

C.M. "Skip" Henkel, III, Ford & Ferraro, Corpus Christi, Hector P. Gonzales, Robert G. Smith, Law Offices of Hector P. Gonzalez, Alice, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, John H. Modesett, Law Offices of Russell H. McMains, Houston, for Appellee.

Before GREEN, DUNCAN and ANGELINI, JJ.

GREEN, Justice.

These proceedings arise out of two cases in which hundreds of plaintiffs have sued four manufacturers of modular-home building materials. In both cases, the Honorable Ricardo H. Garcia entered orders finding that venue was improper as to certain plaintiffs and transferring those plaintiffs' claims to other counties. Three of the defendants have attempted to challenge the orders in interlocutory appeals and original mandamus proceedings. We granted leave to file the petitions for writ of mandamus and consolidated each interlocutory appeal with its corresponding mandamus proceeding. For the reasons that follow, we now dismiss the interlocutory appeals for lack of jurisdiction and deny the requested writs of mandamus.

### FACTS

On August 30, 1996, 419 plaintiffs filed suit in Jim Hogg County against Masonite Corporation, Abitibi–Price Corporation, MG Building Materials, Inc., and Nu–Air Manufacturing Company, Inc. On the same day, 323 different plaintiffs filed suit against the same defendants in Duval County. In both suits, the plaintiffs alleged that building materials manufactured by the defendants were defective. In their original petitions, the plaintiffs alleged that venue was proper under section 15.002 of the civil practice and remedies code because the building materials were used on their residences, which are located in the counties of suit.[1] However, the original petition in the Jim Hogg suit identified only 67 plaintiffs as residents of Jim Hogg County, and the original petition in the Duval suit identified only 165 plaintiffs as residents of Duval County.

Masonite filed motions to transfer venue, seeking a transfer to Dallas County, the county of its principal office in the state. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(3) (Vernon Supp.1997). Abitibi–Price and MG Building likewise moved to transfer venue to the counties of their principal offices in the state, or alternatively to Dallas County, as requested by Masonite.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(1) (Vernon Supp.1997) (providing that venue is proper "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred").

Abitibi–Price also moved to "sever misjoined parties," arguing that the plaintiffs' joinder was improper under section 15.003 of the civil practice and remedies code. *See id.* § 15.003(a).[2]

In response to the defendants' motions, the plaintiffs filed amended petitions, acknowledging that venue is proper in the counties of suit only for the plaintiffs who reside in those counties. The plaintiffs also filed motions to sever. In the Jim Hogg suit, the motion to sever asserted that all the plaintiffs are residents of either Jim Hogg or Jim Wells County, that the defective building materials were installed on their homes in these counties, and that venue is therefore proper in Jim Hogg County for the Jim Hogg County residents and in Jim Wells County for the Jim Wells County residents. The plaintiffs sought severance of the claims asserted by the Jim Wells residents, so that their claims would be tried in Jim Wells County and the claims of the Jim Hogg County residents would continue to be tried in Jim Hogg County. Similarly, in the Duval suit, the motion to sever asserted that the plaintiffs are residents of Duval, Bee, Bexar, Brooks, Cameron, Dimmit, Hidalgo, Kleberg, Live Oak, Moore, Nueces, San Patricio, Webb, or Wilson County and that venue is proper in Duval County for the Duval County residents and in the counties of their residence for the remaining plaintiffs. The plaintiffs sought severance of the claims asserted by the plaintiffs who do not reside in Duval County, so that their claims would be tried in their respective counties of residence and the claims of the Duval County residents would continue to be tried in Duval County.

After holding venue hearings, Judge Garcia issued orders finding that venue was improper as to the plaintiffs who do not reside in the counties of suit. He then severed the claims of those plaintiffs from the claims of the resident plaintiffs, and, on his own motion, transferred their claims to the counties in which they reside. As a result of Judge Garcia's orders, the suits have been divided into sixteen cases that will be tried in sixteen

different counties. The defendants have contested the orders by filing interlocutory appeals and original mandamus proceedings.

## THE INTERLOCUTORY APPEALS

■ Generally, we do not have jurisdiction over interlocutory appeals from venue determinations, including orders transferring venue. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(a) (Vernon 1986); *'21' Int'l Holdings, Inc. v. Westinghouse Elec. Corp.*, 856 S.W.2d 479, 484 (Tex.App.—San Antonio 1993, no writ); *Morrison v. Williams*, 665 S.W.2d 212, 213 (Tex.App.—San Antonio 1984, orig. proceeding); TEX.R. CIV. P. 87(6). The defendants argue, however, that we have jurisdiction over these interlocutory appeals pursuant to section 15.003(c) of the civil practice and remedies code. Because of its importance to the resolution of these proceedings, we quote section 15.003 in its entirety:

(a) In a suit where more than one plaintiff is joined each plaintiff must, independently of any other plaintiff, establish proper venue. Any person who is unable to establish proper venue may not join or maintain venue for the suit as a plaintiff unless the person, independently of any other plaintiff, establishes that:

(1) joinder or intervention in the suit is proper under the Texas Rules of Civil Procedure;

(2) maintaining venue in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have the person's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for the person seeking to join in or maintain venue for the suit and the persons against whom the suit is brought.

(b) A person may not intervene or join in a pending suit as a plaintiff unless the person, independently of any other plaintiff:

---

2. Nu–Air filed special appearances rather than motions to transfer venue, and consequently has not participated in either the appeals or the

mandamus proceedings. Hereafter, the remaining defendants will be referred to collectively as "the defendants."

(1) establishes proper venue for the county in which the suit is pending; or

(2) satisfies the requirements of Subdivisions (1) through (4) of Subsection (a).

(c) Any person seeking intervention or joinder, who is unable to independently establish proper venue, or a party opposing intervention or joinder of such a person may contest the decision of the trial court allowing or denying intervention or joinder by taking an interlocutory appeal to the court of appeals district in which the trial court is located under the procedures established for interlocutory appeals. The appeal must be perfected not later than the 20th day after the date the trial court signs the order denying or allowing the intervention or joinder. The court of appeals shall:

(1) determine whether the joinder or intervention is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard; and

(2) render its decision not later than the 120th day after the date the appeal is perfected by the complaining party.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.003 (Vernon Supp.1997).

Section 15.003 was added to the civil practice and remedies code in 1995, a year in which the legislature substantially rewrote Texas venue law. *See* A. Erin Dwyer et al., *Texas Civil Procedure, Annual Survey of Texas Law*, 49 SMU L. REV. 1371, 1375 (1996) (noting that the 74th legislature repealed four provisions of the venue statutes, added eleven new provisions, and revised five provisions). Section 15.003 applies to all suits commenced after September 1, 1995. TEX. CIV. PRAC. & REM.CODE ANN. § 15.001 historical note (Vernon Supp.1997) [Act of May 18, 1995, 74th Leg., R.S., ch. 138, § 11(a), 1995 Tex. Gen. Laws 978, 981]. We are aware of no published decision construing the scope of section 15.003.

When confronted with a question of statutory construction, certain principles guide our analysis. Our primary goal is to give effect to the legislature's intent. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994); *Linick v. Employers Mut. Cas. Co.*, 822 S.W.2d 297, 300 (Tex.App.—San Antonio 1991, no writ); *see also* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1988). To ascertain the legislative intent, we begin with the language of the statute. *See Sorokolit*, 889 S.W.2d at 241. We read individual words, phrases, and provisions in the context of the entire statute and we follow the rules of grammar and common usage. *See Linick*, 822 S.W.2d at 300; *see also* TEX. GOV'T CODE ANN. § 311.011(a). We may also consider the object sought to be obtained by the legislation, the circumstances under which the statute was enacted, and the legislative history. *See* TEX. GOV'T CODE ANN. § 311.023(1)-(3); *Chaouachi v. State*, 870 S.W.2d 88, 93 (Tex. App.—San Antonio 1993, no pet.); *see also* TEX. GOV'T CODE ANN. § 312.005 (directing courts to "consider at all times the old law, the evil, and the remedy" when construing a statute). Finally, when construing a statute that establishes appellate jurisdiction, we are not at liberty to expand our jurisdiction beyond that conferred by the legislature. *See Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985).

With these principles in mind, we turn to the language of the statute. Section 15.003 expressly allows an interlocutory appeal for only one purpose—to "contest the decision of the trial court *allowing or denying intervention or joinder*." TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(c) (emphasis added). Similarly, the statute limits the reviewing court's inquiry to a single question— "*whether the joinder or intervention is proper*." *Id.* § 15.003(c)(1) (emphasis added). This language indicates that the legislative intent underlying section 15.003(c) was quite narrow: to permit a dissatisfied litigant to obtain speedy appellate review of a trial court's decision regarding whether certain plaintiffs may properly join in the suit.

In these appeals, whether the nonresident plaintiffs may properly join in the suits is not at issue; it is undisputed that the nonresi-

dent plaintiffs may not properly join. The issue in dispute is whether the remedy devised by Judge Garcia to cure the misjoinder was proper. The defendants argue one point of error in both appeals:

> The trial court's decision on [the defendants'] motions challenging joinder is not only erroneous, but void. *The trial court had no power to transfer venue of the improperly joined claims on its own motion,* but was required to transfer to Dallas County, the county of specified venue pursuant to Tex.R. Civ. P. 86(3).

(emphasis added). This point of error makes clear that the defendants are not contesting a decision regarding joinder, the sole basis for a section 15.003(c) interlocutory appeal. Instead, they are contesting a decision regarding transfer of venue—a decision that is not subject to interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(a) (Vernon 1986).

The defendants argue that a joinder determination under section 15.003 necessarily involves a venue determination. Therefore, although interlocutory appeals of venue determinations are generally not allowed, section 15.003(c) specifically provides for interlocutory appeals of these venue determinations. *See Dwyer, supra,* at 1377 ("Section 15.003 also provides for an expedited interlocutory appeal of the trial court's venue determination in the multiple or intervening plaintiff context."). It is true that section 15.003 requires a trial court to determine whether a plaintiff can independently establish venue in order to decide whether the plaintiff can join in a suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a). Because section 15.003(c) authorizes an interlocutory appeal from a trial court's decision allowing or denying joinder, it necessarily authorizes an interlocutory appeal of the venue determination underlying this decision. We reiterate, however, that these appeals present *no* issue regarding Judge Garcia's determination that the nonresident plaintiffs did not independently establish venue. The *only* issue in these appeals is whether Judge Garcia transferred venue of the nonresident plaintiffs' claims to the proper counties. Accordingly, based on the language of the statute, we conclude that section 15.003(c) does not authorize interlocutory appeals in these cases.

The defendants also assert that the legislative history of section 15.003 supports their argument that we have jurisdiction over their appeal. They argue that this case involves forum shopping and that the purpose of section 15.003 is to prevent forum shopping.

The legislative history indicates that the legislature enacted section 15.003 to eliminate a particular type of forum shopping that gained notoriety through a mandamus proceeding in this court. *See Polaris Inv. Management Corp. v. Abascal,* 890 S.W.2d 486 (Tex.App.—San Antonio 1994, orig. proceeding [leave denied] ) (Rickhoff, J., concurring). *Polaris* was a securities fraud suit brought in Maverick County. Over 2000 potential plaintiffs who had been recruited from across the nation sought to "piggyback" their claims on the claims of one plaintiff who resided in the county. None of the defendants resided in the county. *Id.* at 486–87. In his opinion concurring in the denial of the defendants' motion for leave to file a petition for writ of mandamus, Justice Rickhoff decried the "appalling forum shopping and tactical maneuvering" exhibited in the case, but recognized that this court had no power to review the venue determination until the conclusion of the trial. *Id.* at 489. In a subsequent mandamus proceeding, the supreme court noted that "the proper forum for dealing with the problems articulated in Polaris' petition and in the court of appeals' concurring opinion is the Texas Legislature." *Polaris Inv. Management Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995).

Accordingly, the legislature sought to eliminate *Polaris*-style forum shopping by requiring each plaintiff to establish venue. *See* HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 32, 74th Leg., R.S. at 26 (1995) ("This change was brought about due to cases like the one currently in Maverick county involving a suit by 2,000 plaintiffs against Prudential Securities, Polaris Investment Management Co., and others."); *see also Hearings on Tex. S.B. 32 Before the Senate Economic Development Comm.,* 74th

Leg., R.S. Tape 2 at 5 (Feb. 2, 1995) (statement of Senator Montford) (stating that the legislation was designed "to eliminate the practice of finding a plaintiff with legitimate venue and then piggybacking 100s of plaintiffs onto a lawsuit that do not have proper venue or any legitimate connection with the county"). Opponents and committee witnesses pointed out that while the legislation would curb *Polaris*-style forum shopping, it could also lead to inefficient and impractical splintering of lawsuits, by requiring the claims of similarly situated plaintiffs against the same defendants to be tried in different counties. *See* HOUSE COMM. ON STATE AFFAIRS at 27; *Hearings on Tex. S.B. 32,* Tape 3 at 7 (statement of Professor Hazel); *Hearings on Tex. H.B. 6 Before the House Comm. on State Affairs,* 74th Leg., R.S. 23 (March 13, 1995) (statement of Representative Eiland). The legislative history provides very little guidance on the scope of the interlocutory appeal provision. Representative Duncan, the House sponsor of the legislation, explained that section 15.003 was designed to prevent another *Polaris* case from occurring and that "what was the big problem in the *Polaris* case or the case that made all of the news, was the fact that the appellate courts couldn't deal with the problem." Debate on Tex. S.B. 32 on the Floor of the House of Representatives, 74th Leg., R.S. 1 (May 3, 1995).

▮▮▮ The legislative history thus supports the view that the legislature had two goals when it enacted section 15.003:(1) preventing plaintiffs with no connection to the forum from piggybacking their claims onto the claims of other plaintiffs, and (2) providing an interlocutory appeal of a trial court's joinder determination. In these cases, the first goal has been accomplished. As a consequence of Judge Garcia's rulings, no plaintiff will be permitted to litigate his or her claim in a forum to which he or she has no connection. Although the rulings have caused the claims of similarly situated plaintiffs against the same defendants to be splintered into sixteen lawsuits in sixteen different counties, this

type of result was contemplated by the legislature. The second goal is not implicated here because, as explained above, no party challenges Judge Garcia's decision that the nonresident plaintiffs were not properly joined. Accordingly, our examination of the legislative history does not change our view that section 15.003(c) does not allow interlocutory appeals in these cases, and thus we lack appellate jurisdiction.

## THE MANDAMUS PROCEEDINGS

▮▮▮ The defendants argue that if this court does not have jurisdiction over their interlocutory appeals, Judge Garcia's orders are reviewable by mandamus. A person seeking mandamus relief generally must establish that the trial judge committed a clear abuse of discretion that cannot be adequately remedied by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). But the supreme court has held that void orders can be challenged by mandamus, regardless of whether an adequate appellate remedy is available. *See Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex.1973);[3] *see also Cone v. Gregory,* 814 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist] 1991, orig. proceeding) (recognizing that void venue orders may be challenged by mandamus). Here, the defendants assert that Judge Garcia's orders transferring venue are void. They also argue that even if the orders are not void, they do not have an adequate remedy by appeal.

The defendants maintain that venue is a matter between litigants and that a trial judge has no authority to transfer venue sua sponte to a county chosen by the judge. Accordingly, because the nonresident plaintiffs did not even attempt to establish that venue was proper in the counties in which they sued, the defendants argue that Judge Garcia was required to transfer the suits to a county of proper venue chosen by the defendants. The defendants find support for their argument in the cases, statutes, and rules concerning venue.

---

3. Although the supreme court has applied *Dikeman* on at least one occasion since *Walker,* it has expressly declined to decide whether *Dikeman* generally survives *Walker. See Geary v. Peavy,*

878 S.W.2d 602, 603 (Tex.1994). Because we conclude that Judge Garcia's orders are not void, we need not decide the extent to which *Dikeman* survives.

As the party filing the suit, the plaintiff initially chooses venue. *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex.1994). Thereafter, "[t]he court, on motion filed ..., shall transfer an action to another county of proper venue if ... the county in which the action is pending is not a proper county." TEX. CIV. PRAC. & REM.CODE ANN. § 15.063(1) (Vernon 1986). The motion to transfer must specify a county of proper venue to which the suit should be transferred. TEX.R. CIV. P. 86(3). When a defendant moves to transfer venue, the plaintiff has the burden of establishing that venue is proper in the county of suit. TEX.R. CIV. P. 87(2)-(3). "If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue [and] the right to cho[o]se a proper venue passes to the defendant who must prove that venue is maintainable in the county to which transfer is sought." *Wilson*, 886 S.W.2d at 260 & n. 1; *see also Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 833 S.W.2d 736, 741 (Tex.App.—Houston [1st Dist.] 1992, writ denied) ("If the plaintiff files suit in an impermissible county, he waives his option of where to file suit and the defendant may have the suit transferred to another county, as long as venue is proper in that other county."); *Tenneco, Inc. v. Salyer*, 739 S.W.2d 448, 449 (Tex.App.—Corpus Christi 1987, orig. proceeding) (holding that a plaintiff may not correct an improper venue choice by filing a motion to transfer venue). If the defendant fails to prove that its venue choice is proper, the trial judge may direct the parties to make additional proof. *See* TEX.R. CIV. P. 87(3)(d). But, the defendants argue, nothing in the rules, statutes, or case law suggests that a trial judge may transfer venue sua sponte or consider venues other than the county in which the plaintiff filed the suit or the county to which the defendant seeks the suit transferred. *See Robertson v. Gregory*, 663 S.W.2d 4, 5 (Tex.App.—Houston [14th Dist.] 1983, orig. proceeding) ("Courts are without authority, *on their own motion*, to change venue in civil suits.").

The defendants argue that the foregoing procedures and principles apply when a judge decides that plaintiffs are not properly joined under section 15.003. They note that the statute does not expressly state that the trial judge or the plaintiffs may choose the venue for the claims of misjoined plaintiffs. They assert that if the legislature had not intended the procedures and principles described above to apply to section 15.003, it would have stated this intent explicitly. *See Schlichting v. Texas State Bd. of Med. Exam'rs*, 158 Tex. 279, 310 S.W.2d 557, 563 (1958) (stating that when a new statute has been added to a law, the new statute must be construed in light of the original law as it stands after the amendment, so as to render the new and old statutes a harmonious whole). Consequently, they contend that when Judge Garcia determined that the nonresident plaintiffs were not properly joined, he was required to transfer their claims to a county of proper venue specified in their motions to transfer. They argue that by ignoring the counties suggested in the motions to transfer venue and transferring the claims on his own motion to the counties in which the plaintiffs reside, Judge Garcia exceeded his authority.[4] The defendants conclude that because Judge Garcia exceeded his authority by entering the orders, the orders are void and subject to correction by writ of mandamus.

The defendants may well be correct that Judge Garcia exceeded his authority by entering the orders. But Judge Garcia's error, however egregious, does not render the orders void. "A judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990); *accord Glunz v. Hernandez*, 908

---

4. The defendants further argue that Judge Garcia's sua sponte transfer of venue is particularly egregious because he transferred venue to counties suggested by the plaintiffs. In effect, therefore, he granted a motion to transfer venue by the plaintiffs. *See Tenneco*, 739 S.W.2d at 449 (holding that a plaintiff may not correct an improper venue choice by filing a motion to transfer). The defendants assert that allowing a judge to transfer venue sua sponte in these circumstances would result in undesirable venue gamesmanship.

S.W.2d 253, 255 (Tex.App.—San Antonio 1995, writ denied); *see also Dikeman*, 490 S.W.2d at 186 (holding that an order was void and subject to mandamus review because it was entered after the trial court's plenary power over the case expired); *Zimmerman v. Ottis*, 941 S.W.2d 259, 263 (Tex. App.—Corpus Christi 1996, orig. proceeding) (holding that an order transferring venue was void because it was entered after a voluntary nonsuit had been taken and the trial judge's jurisdiction over the case had expired); *Humphrey v. Rawlins*, 88 S.W.2d 776, 776 (Tex.Civ.App.—Dallas 1935, orig. proceeding) (holding that an order transferring venue on the court's own motion after another court had entered a final judgment sustaining the defendant's plea of privilege was void).

■ When a court's action is merely contrary to a statute, the action is erroneous or voidable, rather than void. *Mapco*, 795 S.W.2d at 703; *Tenneco*, 739 S.W.2d at 449–50 (recognizing that a trial judge did not have the authority to grant a plaintiff's motion to transfer venue, but refusing to issue a writ of mandamus to correct the trial court's error because the relator had an adequate remedy by appeal and mandamus is not proper to correct merely erroneous or voidable orders). *But see Dorchester Master Ltd. Partnership v. Anthony*, 734 S.W.2d 151, 152 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding) (holding that an order transferring venue entered after a motion to transfer venue had been denied was void because a rule of civil procedure expressly precluded reconsideration of venue under the facts of the case); *Robertson*, 663 S.W.2d at 5 (holding that a probate judge's order transferring venue on his own motion was void because there was no statutory authority for the order); *Buchanan v. Crow*, 241 S.W. 563, 565–66 (Tex.Civ.App.—Austin 1922, no writ) (holding that an order transferring venue on the judge's motion was void because trial judges have no authority to transfer venue in civil suits on their own motion).

The defendants concede that Judge Garcia had jurisdiction to enter the orders at issue here. Accordingly, the orders are not void. The defendants are therefore entitled to mandamus relief only if they do not have an adequate remedy by appeal.

■ The supreme court has held that an appellate remedy is generally adequate to correct improper venue determinations. *See Bridgestone/Firestone, Inc. v. Thirteenth Court of Appeals*, 929 S.W.2d 440, 441 (Tex. 1996); *Polaris Inv. Management Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex.1995) ("Texas law is quite clear that venue determinations are not reviewable by mandamus."). There are, however, a few exceptions to this general rule. For example, the court has held that an appeal is often an inadequate remedy to protect the rights of parents and children to trial in a particular venue in suits affecting the parent-child relationship. *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987). An appeal is also an inadequate remedy if a trial court rules on a motion to transfer venue without giving the parties the required notice or fails to afford a party a reasonable opportunity to create a record before the venue hearing. *See Union Carbide Corp. v. Moye*, 798 S.W.2d 792, 793 (Tex.1990); *Henderson v. O'Neill*, 797 S.W.2d 905, 905 (Tex.1990).

None of the exceptions apply here. Moreover, the supreme court has not shown a willingness to expand the exceptions. *See Bridgestone/Firestone, Inc.*, 929 S.W.2d at 441–42. Instead, the court has "carve[d] out only limited exceptions to the still-valid general rule that the trial court's determination of a motion to transfer venue may be adequately reviewed on appeal and is not subject to mandamus relief, unless there is some special circumstance to suggest otherwise." *Mauro v. Banales*, 858 S.W.2d 651, 653 (Tex. App.—Corpus Christi 1993) (orig.proceeding).

Relying on *CSR Ltd. v. Link*, 925 S.W.2d 591 (Tex.1996), the defendants suggest that special circumstances exist here because they will be forced to defend these suits against hundreds of plaintiffs in sixteen counties at the same time. In *CSR*, the court granted mandamus relief to correct an order denying a special appearance in a mass tort case. Noting that the mere increased cost and delay of trial and appeal are not sufficient grounds for the exercise of mandamus juris-

diction, the court recognized that mandamus generally will not lie from the denial of a special appearance. *See CSR*, 925 S.W.2d at 596. But the court held that the "extraordinary circumstances" inherent in mass tort cases—the potential for thousands of individual lawsuits, each of which would involve all the complexities of asbestos litigation—demanded early resolution of the fundamental issue of personal jurisdiction to conserve the state's judicial resources. *Id.* at 597. However, the court cautioned against reading its decision too broadly:

> We emphasize that we do not relax or retreat from the requirement that a relator must show an inadequate remedy by appeal. While the question of personal jurisdiction is remediable by appeal in most cases, we hold that under the circumstances of this case, the concerns of judicial efficiency in mass tort litigation combined with the magnitude of the potential risk for mass tort actions against the defendant makes ordinary appeal inadequate.

*Id; see also National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex.1995). *But see Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304 (Tex.1994).

The underlying suits here are not sufficiently analogous to *CSR* to justify our issuing the requested writs of mandamus. *CSR* involved a special appearance rather than a venue determination. Furthermore, in *CSR*, the defendant was confronted with suits by thousands of potential plaintiffs. Here, while it is true that the defendants face a large number of plaintiffs, there is nothing in the record to support a finding that the burden of going forward with the suits is so great as to render them unable to present a defense. *See Canadian Helicopters*, 876 S.W.2d at 308. Therefore, heeding the supreme court's warning not to "relax or retreat from the requirement that a relator must show an inadequate remedy by appeal," *see CSR*, 925 S.W.2d at 597, we conclude that mandamus relief is inappropriate in these proceedings.

### CONCLUSION

The defendants have not shown that section 15.003(c) authorizes an interlocutory appeal from the orders issued by Judge Garcia, that the orders are void, or that an appeal after the conclusion of the trials is an inadequate remedy. Accordingly, the interlocutory appeals are dismissed, and the requested writs of mandamus are denied.