**In re MASONITE CORP., Abitibi–Price Corp., and MG Building Materials, Inc., Relators (Two Cases).**

Nos. 97–0884, 97–0885.

Supreme Court of Texas.

Argued Oct. 20, 1998.

Decided June 17, 1999.

Rehearing Overruled Aug. 26, 1999.

G. Luke Ashley, Dallas, Gregory S. Meece, Patricia A. Nolan, James Edward Maloney, Claudia Wilson Frost, Macey Reasoner Stokes, Houston, J.G. "Buster" Adami, Jr., Alice, Jennifer Mary Smith, Houston, Rebecca R. Kieschnick, Corpus Christi, for Relator.

Russell H. McMains, Corpus Christi, Hector Gonzalez, Robert G. Smith, Alice, Jack Modesett, III, Corpus Christi, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice ABBOTT, and Justice CHEW,[1] join.

We are asked to mandamus a trial judge who, in the face of the plaintiffs' concession that venue was improper and the defendants' properly pleaded and proven venue transfer motions, denied the motions but then "on its own motion" transferred hundreds of claims to multiple counties none of which were forums requested in the transfer motions. We conditionally grant the writ.

Hundreds of homeowners filed suit in Jim Hogg County against Masonite Corporation, Abitibi–Price Corporation, and MG Building Materials, Inc. (sometimes collectively "Masonite") alleging the defendants' use of defective building materials. (A fourth defendant, Nu–Air Manufacturing, Inc., is not a party to this proceeding.) On the same day, hundreds more plaintiffs filed a similar suit against the same defendants in Duval County. The homeowners contended that venue was proper under section 15.002 of the Texas Civil Practice and Remedies Code because the allegedly defective building materials were installed

1. Hon. David Wellington Chew, Justice, Court of Appeals for the Eighth Court of Appeals District, sitting by commission of Hon. George W. Bush, Governor of Texas, pursuant to Section 22.005 of the Texas Government Code.

in their homes in the counties of suit.[2] But in neither the Jim Hogg County suit nor the Duval County suit were all the homeowners residents of the respective counties.

Because of this, Masonite filed motions to transfer venue of the non-resident homeowners' claims to Dallas County, the county of its principal Texas office.[3] Abitibi–Price and MG Building also moved to transfer venue to the counties of their principal offices or, in the alternative, to Dallas County.

In response, the homeowners filed amended petitions and motions to sever, acknowledging that venue was proper in the counties of suit only for those who resided in those counties. In the Jim Hogg suit, the homeowners asserted that all homeowners were residents of either Jim Hogg or Jim Wells County. They pleaded that venue was proper in Jim Hogg County for those homeowners residing in that county, and in Jim Wells County for those residing in that county. And they asked that the trial court sever the claims, sending the non-resident homeowners to their county of residence. Similarly, in the Duval suit, the homeowners asserted that they were residents of Duval, Bee, Bexar, Brooks, Cameron, Dimmit, Hidalgo, Kleberg, Live Oak, Moore, Nueces, San Patricio, Webb, or Wilson County, that venue was proper in Duval County for the Duval County residents, and in the respective counties of residence for the homeowners residing in those counties. Again, the homeowners asked the trial court to sever these claims and send the non-resident homeowners to their respective home counties.

The trial court denied both the motions to transfer venue and the motions to sever, but then "on its own motion," severed the claims of the non-resident homeowners

and transferred them to the counties of their respective residences. None of these counties was the county selected by Masonite. Thus, two suits with hundreds of homeowners have been divided into sixteen cases that will be tried in sixteen different counties. (We note that the same trial judge presided over both of the cases considered in this opinion, and that the orders at issue are virtually identical in all respects relevant to our disposition of this consolidated mandamus proceeding.)

From this action, Masonite appealed to, and petitioned for writ of mandamus from, the court of appeals. That court consolidated and disposed of these matters in a single opinion.[4]

The appeals were based on section 15.003 of the Civil Practice and Remedies Code, which provides for an interlocutory appeal of a trial court's decision allowing or denying intervention or joinder.[5] But the court of appeals, concluding that the orders were venue orders, not severance orders, dismissed the interlocutory appeals for want of jurisdiction. That disposition is the subject of two petitions for review, which, in light of this opinion, we dismiss as moot.

The mandamus petitions were predicated on the trial court's orders being void. The court of appeals denied the requested writs of mandamus. It held that though the trial court may have exceeded its authority by entering the orders, the subject matter of those orders was within the jurisdiction of the trial court. Consequently, the orders were not "void." Because the orders were not void, the court of appeals then looked to see whether Masonite had an adequate remedy by appeal and concluded Masonite did.[6] But we conclude that appeal is not an adequate remedy under the exceptional circumstances created by the trial court's orders.

2. *See* TEX. CIV. PRAC. & REM.CODE § 15.002(a)(1).

3. *See* TEX. CIV. PRAC. & REM.CODE § 15.002(a)(3).

4. 951 S.W.2d 812.

5. *See* TEX. CIV. PRAC. & REM.CODE § 15.003(c).

6. 951 S.W.2d at 820–21.

■ Our mandamus standards are well-established. Mandamus is an extraordinary remedy available only when there is an abuse of discretion and no adequate appellate remedy.[7] Generally, an appellate remedy is adequate even though it involves delay and more expense than obtaining an extraordinary writ.[8] Accordingly, venue determinations as a rule are not reviewable by mandamus.[9]

■ But on rare occasions an appellate remedy, generally adequate, may become inadequate because the circumstances are exceptional.[10] Specifically, a trial court's action can be " 'with such disregard for guiding principles of law that the harm ... becomes irreparable.' "[11] That is the case here.

■ Texas venue law is established. The plaintiff has the first choice to fix venue in a proper county; this the plaintiff does by filing the suit in the county of his choice.[12] If a defendant, through a venue transfer motion, objects to the plaintiff's venue choice, the plaintiff must prove that venue is proper in the county of suit.[13] Where there are multiple plaintiffs joined in a single suit, each plaintiff, independently of the others, must establish proper venue.[14] With some exceptions not relevant here, "[a]ny person who is unable to establish proper venue may not join or maintain venue for the suit as a plaintiff."[15] If the plaintiff fails to establish proper venue, the trial court must transfer venue to the county specified in the defendant's motion to transfer, provided that the defendant has requested transfer to another county of proper venue.[16] On this point, the defendant has the burden to provide prima facie proof.[17]

Because the homeowners conceded venue was not proper for the non-residents, all Masonite needed to do was to offer prima facie proof that Dallas County was a proper venue. This Masonite did.

■ The trial court, in ordering these cases transferred to counties other than that proved to be proper venue, ignored the pleadings, the facts, and the law. This was a clear abuse of discretion.[18] Functionally, the nonresident plaintiffs asked the trial court to fix their mistake and transfer their claims to another county *of their choice*, not Masonite's. The trial court had no discretion to, in effect, grant

7. *See Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992).

8. *See id.* at 842; *see also CSR Ltd. v. Link*, 925 S.W.2d 591, 597 (Tex.1996).

9. *See Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex.1995); *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990).

10. *See, e.g., CSR*, 925 S.W.2d at 596–97; *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995).

11. *National Indus. Sand*, 897 S.W.2d at 771 (quoting *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 308 (Tex.1994)); *see also Deloitte & Touche, LLP v. Fourteenth Court of Appeals*, 951 S.W.2d 394, 398 (Tex.1997).

12. *See Wilson v. Texas Parks & Wildlife Dept.*, 886 S.W.2d 259, 260 (Tex.1994).

13. *See* TEX.R. CIV. P. 87–2(a); *Wilson*, 886 S.W.2d at 260.

14. *See* TEX. CIV. PRAC. & REM.CODE § 15.003(a).

15. *Id.*

16. *See* TEX. CIV. PRAC. & REM.CODE § 15.063; *Wilson*, 886 S.W.2d at 260 n. 1; *Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 833 S.W.2d 736, 741 (Tex.App.—Houston [1 st Dist.] 1992, writ denied); *cf. Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993).

17. *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex.1998); *Wilson*, 886 S.W.2d at 260 n. 1; TEX.R. CIV. P. 87(2)(a), 87(3).

18. *See City of La Grange v. McBee*, 923 S.W.2d 89, 90 n. 1 (Tex.App.—Houston [1 st Dist.] 1996, writ denied); *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 716 (Tex.App.—Dallas 1995, no writ); *Tenneco, Inc. v. Salyer*, 739 S.W.2d 448, 449 (Tex.App.—Corpus Christi 1987, orig. proceeding); *Robertson v. Gregory*, 663 S.W.2d 4, 5 (Tex.App.—Houston [14 th Dist.] 1983, orig. proceeding).

the plaintiffs a transfer of venue; the plaintiffs had the first choice, but not the second, of a proper venue.[19]

■ The fact that the trial court stated that it was "acting on its own motion" when it transferred venue of the nonresident plaintiffs' claims to the sixteen counties in which they respectively reside does not change, but in fact reinforces our conclusion that the trial court abused its discretion. A trial court has no discretion to transfer venue on its own motion, even to a county of proper venue.[20]

■ Relying on cases stating that a trial court "has no authority" to transfer venue on its own motion,[21] Masonite argues that the trial court's venue transfer orders in this case were "void," and therefore Masonite is entitled to mandamus relief without reference to whether it has an adequate remedy on appeal. The court of appeals, citing our opinion in *Mapco, Inc. v. Forrest,*[22] held that the trial court's venue transfer orders were merely "voidable," not "void."[23] The court of appeals is correct. *Mapco* specifically holds that "the mere fact that an action by a court ... is contrary to a statute, constitutional provision or rule of civil or appellate procedure makes it [not void but] 'voidable' or erroneous."[24] That the trial court's venue transfer orders were a clear abuse of discretion does not mean that they were "void."

■ In any event, Masonite argues that this case presents "exceptional circumstances" that make appeal an inadequate remedy. We agree.

Here, the trial court effectively treated the nonresident plaintiffs' motions to sever as motions to transfer venue and granted them. The trial court's actions showed " 'such disregard for guiding principles of law that the harm ... is irreparable.' "[25] The effect of the trial court's disregard for the parties' pleadings, the facts, and the law is that the claims of hundreds of plaintiffs, instead of being tried in a proper forum, are now being tried in multiple improper forums—all trials with automatic reversible error. There is no reason for the resources of Texas courts and the parties to be so strained.[26]

Contrary to the dissent's charge, we do not retreat from *Walker v. Packer*'s requirement that there be no adequate appellate remedy before mandamus will issue.[27] The dissent views this requirement as inflexible, focusing exclusively on whether the parties alone have an adequate appellate remedy. But *Walker* does not require us to turn a blind eye to blatant injustice nor does it mandate that we be an accomplice to sixteen trials that will amount to little more than a fiction. Appeal may be adequate for a particular party, but it is no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue.

Nor is our holding today "directly contrary to *Canadian Helicopters.*"[28] There

---

19. *See WTFO,* 899 S.W.2d at 716; *Tenneco,* 739 S.W.2d at 449.

20. *See City of La Grange,* 923 S.W.2d at 90 n. 1; *Robertson,* 663 S.W.2d at 5.

21. *See City of La Grange,* 923 S.W.2d at 90 n. 1; *Robertson,* 663 S.W.2d at 5; *Humphrey v. Rawlins,* 88 S.W.2d 776, 776 (Tex.Civ.App.— Dallas 1935, orig. proceeding).

22. 795 S.W.2d 700 (Tex.1990).

23. 951 S.W.2d at 820 (citing *Mapco,* 795 S.W.2d at 703).

24. *Mapco,* 795 S.W.2d at 703.

25. *National Indus. Sand,* 897 S.W.2d at 771 (quoting *Canadian Helicopters,* 876 S.W.2d at 308).

26. *See CSR,* 925 S.W.2d at 596 ("The most efficient use of the state's judicial resources is [a] factor we consider in determining whether an ordinary appeal would provide an adequate remedy.").

27. *See* 997 S.W.2d at 200 (Baker, J., dissenting).

we stated that the mere fact that a trial court has committed reversible error is not sufficient by itself to warrant mandamus relief.[29]  But we also noted that "truly extraordinary circumstances" might exist that would render an appellate remedy inadequate.[30]  This case is different from the ordinary situation where a trial court erroneously denies a venue transfer motion.  That situation involves only the resources of the errant trial court and the parties that remain.  And in that case, even though the trial court has committed reversible error, we will not issue mandamus.[31]  But here the trial court has wrongfully burdened fourteen other courts in fourteen other counties, hundreds of potential jurors in those counties, and thousands of taxpayer dollars in those counties.  These are "exceptional circumstances" warranting mandamus relief.[32]

The trial court abused its discretion in rendering these venue transfer orders.  The extreme effects of this abuse render an appellate remedy inadequate.  Accordingly, we conditionally grant mandamus.  We trust that the trial court will comply with this opinion; the writ will issue only if it fails to do so.

Justice BAKER filed a dissenting opinion in which Chief Justice PHILLIPS, Justice O'NEILL, and Justice GONZALES join.

Justice HANKINSON did not participate in the decision.

Justice BAKER, joined by Chief Justice PHILLIPS, Justice O'NEILL, and Justice GONZALES, dissenting.

Today the Court holds that the trial court abused its discretion and that the circumstances in this case are so excep-

tional that Masonite does not have an adequate appellate remedy.  I agree with the Court that the trial court abused its discretion in issuing the transfer orders on its own motion.  But I cannot agree that this case involves exceptional circumstances rendering Masonite's appellate remedy inadequate and warranting mandamus relief.  Accordingly, I respectfully dissent.

## I.  ADEQUATE REMEDY AT LAW—APPEAL

Mandamus will not issue when there is a clear and adequate remedy at law, such as a normal appeal.  See Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992).  Mandamus should issue only in situations involving manifest and urgent necessity and not for grievances where other remedies may apply.  See Holloway v. Fifth Court of Appeals, 767 S.W.2d 680, 684 (Tex.1989).  The requirement that a person seeking mandamus relief establish the lack of an appellate remedy is a "fundamental tenet" of mandamus practice.  Walker, 827 S.W.2d at 840;  Holloway, 767 S.W.2d at 684.

An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining mandamus.  See CSR, Ltd. v. Link, 925 S.W.2d 591, 596 (Tex.1996);  Walker, 827 S.W.2d at 842;  Bell Helicopter Textron, Inc. v. Walker, 787 S.W.2d 954, 955 (Tex.1990).  But on rare occasions, exceptional circumstances may render a generally adequate appellate remedy inadequate.  See, e.g., CSR, 925 S.W.2d at 596–97;  Nat'l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 776 (Tex. 1995);  Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 306 (Tex.1994);  Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59–60 (Tex.1991).  An appeal is inadequate

---

**28.**  See 997 S.W.2d at 197 (Baker, J., dissenting) (citing Canadian Helicopters, 876 S.W.2d at 308 n. 11).

**29.**  See Canadian Helicopters, 876 S.W.2d at 308 n. 11.

**30.**  Id. at 309.

**31.**  See Polaris, 892 S.W.2d at 862;  Bell Helicopter, 787 S.W.2d at 955.

**32.**  See CSR, 925 S.W.2d at 596–97;  Canadian Helicopters, 876 S.W.2d at 308–09.

when the trial court acts with such disregard for guiding principles of law that the relator's harm becomes irreparable, such as the permanent loss of substantial rights. *See Nat'l Indus. Sand,* 897 S.W.2d at 771; *see also Deloitte & Touche, L.L.P. v. Fourteenth Court of Appeals,* 951 S.W.2d 394, 398 (Tex.1997); *Canadian Helicopters,* 876 S.W.2d at 306; *Walker,* 827 S.W.2d at 842; *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958).

Extraordinary circumstances do not exist when a trial court's ruling is merely incidental to the trial process and does not permanently deprive a party of substantial rights. *See Polaris Inves. Mgmt. Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995); *Canadian Helicopters,* 876 S.W.2d at 306; *Hooks,* 808 S.W.2d at 59–60. This Court lacks jurisdiction to issue writs of mandamus to supervise or correct incidental trial rulings when there is an adequate remedy by appeal. *See Bell Helicopter,* 787 S.W.2d at 955. Incidental rulings include venue determinations. *See Bridgestone/Firestone, Inc. v. Thirteenth Court of Appeals,* 929 S.W.2d 440, 441 (Tex.1996); *Montalvo v. Fourth Court of Appeals,* 917 S.W.2d 1, 2 (Tex.1995); *Polaris,* 892 S.W.2d at 862; *Bell Helicopter,* 787 S.W.2d at 955; *see also Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969).

Additionally, the mere fact that a trial court's erroneous order will result in an eventual reversal on appeal does not mean that a trial will be a "waste of judicial resources" as *Walker* uses that term. *See Canadian Helicopters,* 876 S.W.2d at 308 n. 11 (citing *Walker,* 827 S.W.2d at 843). To hold otherwise would mean that virtually any reversible error by a trial court would be a proper subject for mandamus review. *See Canadian Helicopters,* 876 S.W.2d at 308 n. 11. Such a result is inconsistent with the rule that mandamus is an extraordinary remedy to be used only in limited circumstances. *See Canadian Helicopters,* 876 S.W.2d at 308 n. 11.

## II. ANALYSIS

### A. ABUSE OF DISCRETION

I agree with the Court that the trial court abused its discretion in issuing the transfer orders on its own motion. Masonite carried its burden to establish proper venue for its requested transfer. A trial court cannot change venue on its own motion in civil suits. *See City of La-Grange v. McBee,* 923 S.W.2d 89, 90 n. 1 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Robertson v. Gregory,* 663 S.W.2d 4, 5 (Tex.App.—Houston [14th Dist.] 1983, orig. proceeding); *Humphrey v. Rawlins,* 88 S.W.2d 776 (Tex.Civ.App.—Dallas 1935, orig. proceeding).

### B. ADEQUATE APPELLATE REMEDY

Masonite asserts that it is entitled to mandamus relief regardless of whether it has an adequate remedy on appeal because: (1) the trial court's orders are void; and (2) this case presents "exceptional circumstances." The majority properly rejects Masonite's first argument. *See Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990).

The majority recognizes that, as a rule, venue determinations are not reviewable by mandamus, citing both *Polaris* and *Bell Helicopter.* But the Court agrees with Masonite's argument that it does not have an adequate appellate remedy and grants mandamus relief based on this conclusion. In doing so, the Court rejects precedent on this specific issue, circumvents public policy, retreats to where the law was before *Walker,* and reinstates a principle of law *Walker* specifically disapproved.

The majority asserts it does not retreat from *Walker's* requirement that there be no adequate appellate remedy before mandamus will issue. But the majority then focuses on preserving judicial and public resources instead of the parties' rights. The majority does not explain why mandamus relief should not be granted in each case where reversible error exists, because doing so would certainly preserve judicial

and public resources. Additionally, the majority expresses discomfort to being an "accomplice to sixteen trials that will amount to little more than a fiction." What if, instead of sixteen trials, there were just ten? Five? How much "waste of judicial and public resources" should be tolerated before a Court grants mandamus relief? The fallacy in the majority's decision is that the Court no longer has, nor does it provide, guidance on this issue for future cases.

In reaching its conclusion that "exceptional circumstances" exist in this case, the majority relies on *CSR*. *See CSR*, 925 S.W.2d at 597. In *CSR* we issued mandamus to correct a trial court's erroneous order denying a defendant's special appearance. *See CSR*, 925 S.W.2d at 596–97. Like the venue orders here, an order denying a special appearance is not typically subject to mandamus. *See CSR*, 925 S.W.2d at 596–97. In *CSR* the Court granted mandamus because of "exceptional circumstances." *See CSR*, 925 S.W.2d at 596–97.

But the circumstances in *CSR* are distinguishable from the circumstances here. Indeed, in *CSR*, the Court emphasized that in granting mandamus because of the "extraordinary circumstances," the Court was not relaxing or retreating from the requirement that a relator must show an inadequate appellate remedy. *See CSR*, 925 S.W.2d at 597. And the Court identified several circumstances that made CSR's appellate remedy uniquely inadequate.

First, in *CSR* thousands of potential claimants existed based on possible exposure to pipes containing CSR asbestos. *See CSR*, 925 S.W.2d at 596. Here, the number of plaintiffs is fixed and the number of suits that Masonite must defend is likewise fixed. Moreover, Masonite has not presented any evidence showing that there are any potential claimants who have yet to sue.

Second, in *CSR* we were influenced by the significant strain that mass tort litigation places on a defendant's resources and the considerable pressure to settle such cases regardless of the underlying merits. *See CSR*, 925 S.W.2d at 596. This case is different because venue remains proper over the plaintiffs in the Jim Hogg and Duval County suits, and nothing prevents these cases from going forward and being tried on their merits. Moreover, the number of trials that Masonite might face nowhere approaches the magnitude of mass tort litigation that CSR faced in Texas.

Third, in *CSR* we were concerned about an inefficient use of the state's judicial resources. *See CSR*, 925 S.W.2d at 596. Efficiency concerns do not render an appeal inadequate here. All the plaintiffs' claims, both resident and non-resident, were properly brought in Texas. It is true that the claims that were improperly transferred, if tried, will have built-in reversible error. But here this factor does not equate to "exceptional circumstances." The mere fact that a trial court's erroneous order will result in an eventual reversal on appeal does not mean that the trial will be a waste of judicial resources. *See Canadian Helicopters*, 876 S.W.2d at 308 n. 11. The claims in *CSR* were asbestos claims. Those claims were complicated, potentially involved multitudes of parties, and the trials were expected to be quite lengthy. *See CSR*, 925 S.W.2d at 597. But nothing in this record shows that the plaintiffs' claims involve complicated issues, additional multitudes of parties, or lengthy trials.

Finally, in *CSR* there were constitutional implications that are not present here. In *CSR* the Court found that the trial court exceeded the limitations imposed by the Federal Constitution's due process clause. *See CSR*, 925 S.W.2d at 596. Here, there is no indication that the transfer orders violate Masonite's constitutional rights. The trial court's error in this case is procedural, not constitutional.

In addition to improperly relying on *CSR*, the Court insists that the trial court's

"built-in" reversible error is an "exceptional circumstance" that should not be allowed to strain the parties' resources or the Texas Courts. This conclusion is directly contrary to *Canadian Helicopters.* *See Canadian Helicopters,* 876 S.W.2d at 308 n. 11; *see also Walker,* 827 S.W.2d at 843.

## C. PUBLIC POLICY

This State's public policy is another reason why mandamus should not issue here to control the trial court's order determining the motion to transfer. Our Legislature, and indeed, this Court, has mandated that no interlocutory appeal lies from the trial court's determination of a motion to transfer. *See* TEX. CIV. PRAC. & REM.CODE § 15.064(a); TEX.R. CIV. P. 87(6); *Ogburn v. Blackburn,* 697 S.W.2d 822, 823 (Tex. App.—Amarillo 1985, orig. proceeding); *Hendrick Med. Center v. Howell,* 690 S.W.2d 42, 45 (Tex.App.—Dallas 1985, orig. proceeding). To grant mandamus, as the majority does here, permits the very interlocutory appeal the statute was enacted and the rule was promulgated to prohibit. *Ogburn,* 697 S.W.2d at 823–824; *Hendrick Med. Center,* 690 S.W.2d at 45–46.

## III. ON THE ROAD AGAIN—"OTRA VEZ CON SENTIMIENTO"[1]

The majority asserts that I view *Walker's* inadequate appellate remedy requirement as inflexible. Guilty as charged. When engaged in the judicial function of applying the law to a particular case, I am inflexible. But that inflexibility is based upon a sound judicial policy. It's called stare decisis.

Only five years ago, this Court decided *Walker* and *Canadian Helicopters.* Only four years ago, this Court stated that we adhere to our precedents for reasons of efficiency, fairness, and legitimacy. *Weiner v. Wasson,* 900 S.W.2d 316, 320

(Tex.1995). From today's opinion it is obvious that the Court continues to pay only lip service to "stare decisis as a sound policy." *Weiner,* 900 S.W.2d at 320. As the *Weiner* dissent advocates, we should not succumb to a temptation to continually revisit prior decisions as new fact situations arise. *See Weiner,* 900 S.W.2d at 332. Mandamus should not issue simply because we disagree with the trial court's ruling. *See CSR, Ltd.,* 925 S.W.2d at 604 (Baker, J., dissenting); *Buller,* 806 S.W.2d at 226.

## IV. CONCLUSION

That the majority opinion mounts a collateral attack on the dissent instead of directly attacking controlling precedent exposes its weaknesses. The Court's decision here revives an overruled, more lenient standard—the appellate remedy must be "equally convenient, beneficial, and effective as mandamus." *See e.g., Jampole v. Touchy,* 673 S.W.2d 569, 576 (Tex.1984); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 439 (1959); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1068 (1926). The Court expressly disapproved of this standard in *Walker.* *See Walker,* 827 S.W.2d at 842. I would hold that an appeal is adequate and deny mandamus relief. Because the Court holds to the contrary, I respectfully dissent.

---

1. *See In re Ford Motor Co.,* S.W.2d 988 S.W.2d 714 (Tex.1998)(Baker, J., dissenting); *Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 595 (Tex.1996)(Baker, J., dissenting); *CSR,* 925 S.W.2d at 603 (Baker, J., dissenting).