Opinion issued August 25, 2005



 
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00173-CV




IN RE EILENE HUAG, R.N. & KEVIN RITTGER, M.D., Relators





Original Proceeding on Petition for Writ of Mandamus




OPINION ON PETITION FOR WRIT OF MANDAMUS

          Relators, Eilene Huag, R.N. and Kevin Rittger, M.D. (together referred to as
relators) have filed a petition for writ of mandamus


 complaining about the trial
court’s


 order granting the real party in interest’s, Harold Dean Willes, Independent
Administrator of the Estate of Charles Albert Willes Jr.’s, motion to compel
deposition testimony. We conditionally grant the relief requested in relators’ petition
for writ of mandamus.
Background
          The real party in interest, Willes, filed a medical malpractice suit against
relators and others under the Texas Medical Liability Act (TMLA).


 Relators
answered and denied Willes’ allegations. On October 7, 2004, Willes sent a request
to depose each relator. Both relators declined. In response, Willes filed a motion to
compel the deposition testimony of relators. After a hearing, the trial court granted
the motion to compel on October 20, 2004.


 On February 24, 2005, relators filed a
petition for writ of mandamus seeking relief from this Court to vacate the trial court’s
order. Pursuant to our order, the real party in interest has filed a response to relators’
petition for writ of mandamus.
 
Mandamus
          Mandamus is an extraordinary remedy that will issue only to correct a clear
abuse of discretion or the violation of a legal duty when there is no adequate remedy
at law. In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999). In determining
whether there has been a clear abuse of discretion justifying mandamus relief, the
reviewing court must consider whether the trial court’s ruling was one compelled by
the facts and circumstances or was arbitrary, unreasonable, or reached without
reference to any guiding rules or principles. Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 918 (Tex. 1985); Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241–42 (Tex. 1985).
Analysis
          Relators ask this Court to interpret section 74.351 of the TMLA. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351 (Vernon 2005). Statutory interpretation is a
question of law. In re Canales, 52 S.W.3d 698, 701 (Tex. 2001). Our primary goal
is to ascertain and effectuate the legislature’s intent. Albertson’s, Inc. v. Sinclair, 984
S.W.2d 958, 960 (Tex. 1999). In doing so, we begin with the statute’s plain language
because we assume that the legislature tried to say what it meant and, thus, that its
words are the surest guide to its intent. Fitzgerald v. Advanced Spine Fixation Sys.,
Inc., 996 S.W.2d 864, 865–66 (Tex. 1999). To ascertain legislative intent, however,
we must look to the statute as a whole and not to its isolated provisions. Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). In ascertaining legislative
intent, we do not confine our review to isolated statutory words, phrases, or clauses,
but we instead examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44
S.W.3d 86, 90 (Tex. 2001). We may also consider, among other things and whether
or not the statute is ambiguous, the statute’s objectives, the circumstances under
which the statute was enacted, legislative history, common law, former law, similar
provisions, and the consequences of the statutory construction. See Tex. Gov’t
Code Ann. § 311.023(1)-(5) (Vernon 2005).
          It is a well-settled rule of statutory construction that we must presume that
every word of a statute has been used for a purpose. Laidlaw Waste Sys., Inc. v.
Wilmer, 904 S.W.2d 656, 659 (Tex. 1995). Likewise, we must presume that every
word excluded from a statute has been excluded for a purpose. Id. This rule
complements another general statutory construction principle that courts should not
insert words into a statute except to give effect to clear legislative intent. Id. 
Moreover, a court of appeals should presume the legislature intended a just and
reasonable result in enacting a statute. Segal v. Emmes Capital, L.L.C., 155 S.W.3d
267, 287 (Tex. App.—Houston [1st Dist.] 2004, no pet.). An appellate court should
not construe a statute in a manner that will lead to a foolish or absurd result when
another alternative is available. Univ. of Tex. Southwestern Med. Ctr. at Dallas v.
Loutzenhiser, 140 S.W.3d 351, 367 n.20 (Tex. 2004) (quotations omitted).
          With these principles in mind, we turn to the substance of relators’ complaints.
          Subsection 74.351(s) of the TMLA stays all discovery in a medical malpractice
suit until the expert report has been filed, unless excepted.


 It provides:
                    (s)      Until a claimant has served the expert report and
curriculum vitae as required by Subsection (a), all
discovery in a health care liability claim is stayed except
for the acquisition by the claimant of information,
including medical or hospital records or other documents
or tangible things, related to the patient’s health care
through:
 
                              (1)     written discovery as defined in Rule 192.7,


 Texas
Rules of Civil Procedure;
 
                              (2)     depositions on written questions under Rule 200,



Texas Rules of Civil Procedure; and 
 
                              (3)     discovery from nonparties under Rule 205,


 Texas
Rules of Civil Procedure.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s)(1)-(3) (Vernon 2005).
          Subsection 74.351(u) provides, however:
                    (u)     Notwithstanding any other provision of this section, after
a claim is filed all claimants, collectively, may take not
more than two depositions before the expert report is
served as required by Subsection (a). 

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(u) (Vernon 2005) (emphasis added).


 
          Willes contends that subsection 74.351(u) expands the discovery permitted by
section 74.351(s) to permit the claimants to take two oral or written depositions of
parties or non-parties, in addition to the depositions permitted by subsection
74.351(s). He argues that subsections 74.351(s) and 74.351(u) are independent and
equal provisions of section 74.351 and that the language “notwithstanding any other
provision of this section” in subsection 74.351(u) means exactly what it says on its
face: independently of any other subsection of section 74.351, “all claimants,
collectively, may take not more than two depositions before the expert report is
served.” 
          Relators disagree. They contend that subsection 74.351(s) stays all discovery
in a medical malpractice action before the filing of the claimant’s expert report with
the exception of the types of discovery expressly referenced in that subsection and
that subsection 74.351(u) further restricts the depositions permitted by subsection
74.351(s) prior to service of the expert report to two depositions by all claimants
collectively. Relators argue that because the legislature expressly referenced the
rules governing depositions on written questions and depositions of non-parties in
defining permitted discovery in subsection 74.351(s), but did not reference the rules
governing the oral depositions of parties, and did not define the term depositions in
subsection 74.351(u), the same definition of the term should be used in both sections
under the doctrine of expressio unius est exclusio alterius.


 We acknowledge that
because oral depositions of parties are not expressly mentioned in subsection
74.351(s) as exceptions to the stay, they are not permitted by that subsection. 
However, subsection 74.351(u) is an independent subsection of section 74.351 that
applies, by its plain language, notwithstanding any other subsection. Therefore, we
do not agree that the doctrine of expression unius est exclusio alterius requires us to
read subsection 74.351(u) as limited by the references to rules governing permissible
discovery in subsection 74.351(s).



          Relators also argue that because the general term depositions is not defined in
subsection 74.351(u), while Texas Rules of Civil Procedure 200 and 205 governing
written depositions and depositions of non-parties are specifically referenced in
subsection 74.351(s), the rule of ejusdem generis requires us to construe the general
term depositions in subsection 73.351(u) as restricted to the specific types of
depositions mentioned in subsection 74.351(s).


 We find this argument unpersuasive
also and for the same reasons: subsection 74.351(u) is an independent subsection of
section 74.351, and the disclaimer at the beginning of subsection 74.351(u) expressly
states that all claimants, collectively, are allowed to take two depositions
“notwithstanding any other provision of this section.” See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(u). 
          Relators also rely, however, on In re Miller, 133 S.W.3d 816 (Tex.
App.—Beaumont 2004, orig. proceeding), to support their arguments. In Miller, the
Beaumont Court of Appeals addressed the same question with which we are now
confronted. The court discussed the phrase “notwithstanding any other provision”
and concluded that it could not mean that in construing subsection 74.351(u) the court
should ignore entirely the discovery provisions set forth in subsection 74.351(s). See
id. at 818. It reasoned that the numerical limitation in subsection 74.351(u) would be
given no effect if unlimited depositions were permitted by subsection 74.351(s) and
two additional depositions were permitted by subsection 74.351(u). Id. In addressing
the phrase “notwithstanding any other provision,” the court stated,
The phrase notwithstanding any other provision of this section in
subsection (u) references the reporting requirements imposed by
the section and the discovery authorized by subsection (s).
Nevertheless, subsection (u) limits the number of depositions
allowed by subsection (s) to two; subsection (u) places this
numerical limitation on the type of depositions permitted by
subsection (s). The limitation is imposed in spite of the expert
report requirements, and notwithstanding the lack of a numerical
limitation on depositions in subsection (s). We conclude any oral
depositions stayed under subsection (s)


 are not authorized by
subsection (u).

          We agree with the reasoning in Miller. The correct construction of the statute
turns upon harmonizing the language of subsections 74.351(s) and 74.351(u). The
question is (1) whether subsection 74.351(u) should be read as providing that,
notwithstanding the language in subsection 74.351(s) limiting discovery by a claimant
during the stay prior to service of the expert report, subsection 74.351(u) permits two
additional oral or written depositions to be taken of anyone by all claimants together,
as Willes argues, or (2) whether it should be read as providing that, notwithstanding
the language in subsection 74.351(s) permitting a claimant to take a number of
different types of discovery during the stay prior to service of the expert report,
including certain oral and written depositions, subsection 74.351(u) limits the
permitted depositions to a total of two for all claimants together, as relators argue. 
Because the plain language of the statute permits either reading, we must determine
whether only one reading is reasonable and consistent with legislative intent.
          In promulgating the TMLA in 2003, the Texas Legislature listed a number of
findings regarding the current state of health care in Texas. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.001 historical note (Vernon 2005) [Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884]. The findings indicated
that the number of health care claims and the amounts being paid out in settlements
and judgments had increased “inordinately” since 1995, affecting medical
professional liability rates; there was, consequently, a serious problem in the
availability and affordability of adequate medical professional liability insurance,
creating a medical malpractice insurance crisis with a material adverse impact on the
delivery of medical and health care and with both direct and indirect costs to patients
and the public; and the adoption of modifications to the “medical, insurance and legal
systems” would lower insurance rates for medical liability insurance. Id. 
          Because of these findings, the legislature stated that its purpose was 
to improve and modify the system by which health care liability claims are
determined in order to:
 
          (1)     reduce excessive frequency and severity of health care
liability claims through reasonable improvements and
modification in the Texas insurance, tort, and medical
practice systems;
 
          (2)     decrease the cost of those claims and ensure that awards
are rationally related to actual damages; 
 
          (3)     do so in a manner that will not unduly restrict a claimant’s
rights any more than necessary to deal with the crisis;
 
          (4)     make available to physicians, hospitals, and other health
care providers protection against potential liability through
the insurance mechanism at reasonably affordable rates;
 
          (5)     make affordable medical and health care more accessible
and available to the citizens of Texas;
 
          (6)     make certain modification in the medical, insurance, and
legal systems in order to determine whether or not there
will be an effect on rates charged by insurers for medical
professional liability insurance; and
 
          (7)     make certain modifications to the liability laws as they
relate to health care liability claims only and with an
intention of the legislature to not extend or apply such
modifications of liability laws to any other area of the
Texas legal system or tort law.

See id. §74.001 [Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex.
Gen. Laws 847, 884–885] (emphasis added). We are also mindful of the former
provisions of the Medical Liability and Insurance Improvement Act of Texas, which
did not place any limitations on discovery. See Act of April 19, 1977, 65th Leg.,
R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2064, repealed by Act of May 16, 2003,
78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at
Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (Vernon 2005)) (“former article
4590i”).
          The legislature’s express purposes in enacting the TMLA included the
modification of the Texas tort practice system to decrease the cost of health care
liability claims without unduly restricting a claimant’s rights. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.001. With the addition of subsections 74.351(s) and
74.351(u) to section 74.351, the legislature satisfied these purposes—the Act now
stays discovery prior to the expert’s report, but lifts the stay with respect to specified
types of discovery. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s), (u).
          Significantly, the only types of discovery not excepted from the stay in
subsection 74.351(s) are the oral depositions of parties and pre-suit depositions. 
Subsection 74.351(s) expressly lifts the stay with respect to requests for disclosure,
requests for production, interrogatories, requests for admission, depositions on
written questions, and oral depositions of non-parties. The only limitations on the
permissible forms of discovery for each claimant established by subsection 74.351(s)
are those provided by the rules specifically referenced in that subsection, including,
for example, rule 205's limitation of discovery from a non-party to a deposition on
written questions, a request for production of documents with an oral examination,
and a request for production without deposition. Thus, if subsection 74.351(u)
permitted the claimants to take two oral depositions of parties in addition to the oral
and written depositions of an unlimited number of non-parties and an unlimited
number of depositions on written questions of parties permitted each claimant by
subsection 74.351(s), the stay of discovery imposed by section 74.351(s) prior to
service of the expert report would be effectively meaningless and the detailed
articulation of permissible discovery in subsection 74.351(s) would be otiose. 
          We will not interpret a statute in such a way as to make any part of it
meaningless. See Ramirez v. Collier, Shannon, Scott, PLLC, 123 S.W.3d 43, 48 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). We conclude that subsections
74.351(s) and 74.351(u) can be meaningfully harmonized only if subsection 74.351(s)
is read as limiting each claimant’s discovery prior to service of the expert report to
the types of discovery permitted by the rules referenced in that subsection, and
subsection 74.351(u) is read as further limiting discovery during the stay by
permitting all claimants, collectively, to take not more than two depositions of the
types permitted by subsection 74.351(s). We further conclude that only this
interpretation of subsections 74.351(s) and 74.351(u) fulfills the stated purpose of the
TMLA of holding down legal costs and thus malpractice insurance costs.
          Accordingly, we hold that subsection 74.351(s) of the TMLA defines the types
of permissible discovery excepted from the stay imposed prior to service of the
expert’s report and that subsection 74.351(u) restricts all claimants collectively to
taking not more than two depositions of the types permitted by subsection 74.351(s)
during the stay.
Conclusion
          Based on our interpretation of section 74.351, we conclude that the trial court
abused its discretion in compelling relators to give deposition testimony. We
conditionally grant the relief requested in relators’ petition for writ of mandamus and
order the trial court to vacate its order compelling relators to give deposition
testimony. Mandamus will issue only if the trial court fails to comply.
 
                                                             Evelyn V. Keyes
                                                             Justice
Panel consists of Justices Taft, Keyes, and Hanks.
Justice Hanks, dissenting.