In re Eilene HUAG, R.N. & Kevin Rittger, M.D., Relators.

No. 01–05–00173–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 2005.

Rehearing Overruled Sept. 28, 2005.

Erin E. Lunceford, Munisteri, Sprott, Rigby, Newson & Vincent, P.C., Jeffrey H. Uzick, Joel Randal Sprott and Roger A. Berger, Houston, TX, for Appellant.

Lynn J. Klement, Klement & Burridge, L.L.P., Angleton, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION ON PETITION FOR WRIT OF MANDAMUS

EVELYN V. KEYES, Justice.

Relators, Eilene Huag, R.N. and Kevin Rittger, M.D. (together referred to as rela-

tors) have filed a petition for writ of mandamus[1] complaining about the trial court's[2] order granting the real party in interest's, Harold Dean Willes, Independent Administrator of the Estate of Charles Albert Willes Jr.'s, motion to compel deposition testimony. We conditionally grant the relief requested in relators' petition for writ of mandamus.

## Background

The real party in interest, Willes, filed a medical malpractice suit against relators and others under the Texas Medical Liability Act (TMLA).[3] Relators answered and denied Willes' allegations. On October 7, 2004, Willes sent a request to depose each relator. Both relators declined. In response, Willes filed a motion to compel the deposition testimony of relators. After a hearing, the trial court granted the motion to compel on October 20, 2004.[4] On February 24, 2005, relators filed a petition for writ of mandamus seeking relief from this Court to vacate the trial court's order. Pursuant to our order, the real party in interest has filed a response to relators' petition for writ of mandamus.

## Mandamus

 Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate remedy at law. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). In determining whether there has been a clear abuse of discretion justifying mandamus relief, the reviewing court must consider whether the trial court's ruling was one compelled by the facts and circumstances or was arbitrary, unreasonable, or reached without reference to any guiding rules or principles. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

## Analysis

 Relators ask this Court to interpret section 74.351 of the TMLA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2005). Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex.2001). Our primary goal is to ascertain and effectuate the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). To ascertain legislative intent, however, we must look to the statute as a whole and not to its isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001). In ascertaining legislative intent, we do not confine our review

---

1. This is the second petition for writ of mandamus filed by relators. The Fourteenth Court of Appeals issued a memorandum opinion, *In re Huag & Rittger*, 14–04–01077–CV, 2005 WL 171456 (Tex.App.-Houston [14th Dist.] Jan. 27, 2005), that denied relief because the petition failed to comply with the verification requirements. Relators filed that petition on December 8, 2004.

2. The Honorable James A. Blackstock, judge of the County Court at Law No. 3 of Brazoria County, Texas. The underlying lawsuit is *Ha-*

*rold Dean Willes, Independent Administrator of the Estate of Charles Albert Willes Jr. v. Christus St. John Hospital, Katherine Sheffield, M.D., Kevin Rittger, M.D., & Eilene Huag*, No. 26062 (County Court at Law No. 3., Brazoria County, Texas).

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001 et seq. (Vernon 2005).

4. We have no record from the trial court's hearing.

to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001). We may also consider, among other things and whether or not the statute is ambiguous, the statute's objectives, the circumstances under which the statute was enacted, legislative history, common law, former law, similar provisions, and the consequences of the statutory construction. *See* TEX. GOV'T CODE ANN. § 311.023(1)-(5) (Vernon 2005).

It is a well-settled rule of statutory construction that we must presume that every word of a statute has been used for a purpose. *Laidlaw Waste Sys., Inc. v. Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Likewise, we must presume that every word excluded from a statute has been excluded for a purpose. *Id.* This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. *Id.* Moreover, a court of appeals should presume the legislature intended a just and reasonable result in enacting a statute. *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 287 (Tex.App.-Houston [1st Dist.] 2004, no pet.). An appellate court should not construe a statute in a manner that will lead to a foolish or absurd result when another

alternative is available. *Univ. of Tex. Southwestern Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 367 n. 20 (Tex. 2004) (quotations omitted).

With these principles in mind, we turn to the substance of relators' complaints.

Subsection 74.351(s) of the TMLA stays all discovery in a medical malpractice suit until the expert report has been filed, unless excepted.[5] It provides:

> (s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:
>
> (1) written discovery as defined in Rule 192.7,[6] Texas Rules of Civil Procedure;
>
> (2) depositions on written questions under Rule 200,[7] Texas Rules of Civil Procedure; and
>
> (3) discovery from nonparties under Rule 205,[8] Texas Rules of Civil Procedure.

---

**5.** Subsection 74.351(a) requires a claimant to file an expert report and a curriculum vitae of each expert listed in the report not later than the 120th day after the date the claim was filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon 2005).

**6.** Rule 192.7 defines written discovery as "requests for disclosure, requests for production and inspection of documents and tangible things, requests for entry onto property, interrogatories, and requests for admission." TEX.R. CIV. P. 192.7(a).

**7.** Rule 200 allows a party to "take the testimony of any person or entity by deposition on

written questions before any person authorized by law to take depositions on written questions." TEX.R. CIV. P. 200(a). The notice may include a request for production of documents. *Id.* at 200.1(b).

**8.** Rule 205.1 allows the following types of discovery from a nonparty: (1) an oral deposition; (2) a deposition on written questions; (3) a request for production of documents or tangible things served with a notice of deposition on oral examination or written questions; and (4) a request for production of documents and tangible things without deposition, as provided by rule 205.3. *See* TEX.R. CIV. P. 205.1(a),(b),(c), and (d).

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s)(1)-(3) (Vernon 2005).

Subsection 74.351(u) provides, however:

> (u) *Notwithstanding any other provision of this section,* after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(u) (Vernon 2005) (emphasis added).[9]

Willes contends that subsection 74.351(u) expands the discovery permitted by section 74.351(s) to permit the claimants to take two oral or written depositions of parties or non-parties, in addition to the depositions permitted by subsection 74.351(s). He argues that subsections 74.351(s) and 74.351(u) are independent and equal provisions of section 74.351 and that the language "notwithstanding any other provision of this section" in subsection 74.351(u) means exactly what it says on its face: independently of any other subsection of section 74.351, "all claimants, collectively, may take not more than two depositions before the expert report is served."

Relators disagree. They contend that subsection 74.351(s) stays *all* discovery in a medical malpractice action before the filing of the claimant's expert report with the exception of the types of discovery expressly referenced in that subsection and that subsection 74.351(u) further restricts the depositions permitted by subsection 74.351(s) prior to service of the expert report to two depositions by all claimants collectively. Relators argue that because the legislature expressly referenced the rules governing depositions on written questions and depositions of non-parties in defining permitted discovery in subsection 74.351(s), but did not reference the rules governing the oral depositions of parties, and did not define the term depositions in subsection 74.351(u), the same definition of the term should be used in both sections under the doctrine of *expressio unius est exclusio alterius*.[10] We acknowledge that because oral depositions of parties are not expressly mentioned in subsection 74.351(s) as exceptions to the stay, they are not permitted by that subsection. However, subsection 74.351(u) is an independent subsection of section 74.351 that applies, by its plain language, notwithstanding any other subsection. Therefore, we do not agree that the doctrine of *expression unius est exclusio alterius* requires us to read subsection 74.351(u) as limited by the references to rules governing permissible discovery in subsection 74.351(s).[11]

---

9. Both subsections 74.351(s) & 74.351(u) were added to section 74.351 in the 2003 Legislative session. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 876–877.

10. The doctrine of *expressio unius est exclusio alterius* means the 'expression of one implies the exclusion of others.' *See Mid–Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 273–74 (Tex.1999). The doctrine is an aid in determining legislative intent, but not an absolute rule, just as are other aids to statutory interpretation such as the presumption that the legislature acts with knowledge of prior court decisions and interpretations of statutory lan-

guage. *See Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999); *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex. 1975); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 187 (Tex.1968).

11. There is also another reason for not viewing the term depositions as defined for all of section 74.351 by references to rules governing depositions on written questions and non-party depositions in subsection 74.351(s). Relators ask us to define the term consistently throughout other subsections within section 74.351, but they refer us only to subsections 74.351(s) and 74.351(u). The term depositions, however, is used elsewhere in the stat-

Relators also argue that because the general term depositions is not defined in subsection 74.351(u), while Texas Rules of Civil Procedure 200 and 205 governing written depositions and depositions of non-parties are specifically referenced in subsection 74.351(s), the rule of *ejusdem generis* requires us to construe the general term depositions in subsection 73.351(u) as restricted to the specific types of depositions mentioned in subsection 74.351(s).[12] We find this argument unpersuasive also and for the same reasons: subsection 74.351(u) is an independent subsection of section 74.351, and the disclaimer at the beginning of subsection 74.351(u) expressly states that all claimants, collectively, are allowed to take two depositions "notwithstanding any other provision of this section." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(u).

Relators also rely, however, on *In re Miller*, 133 S.W.3d 816 (Tex.App.-Beaumont 2004, orig. proceeding), to support their arguments. In *Miller*, the Beaumont Court of Appeals addressed the same question with which we are now confronted. The court discussed the phrase "notwithstanding any other provision" and concluded that it could not mean that in construing subsection 74.351(u) the court should ignore entirely the discovery provisions set forth in subsection 74.351(s). *See id.* at 818. It reasoned that the numerical limitation in subsection 74.351(u) would be

given no effect if unlimited depositions were permitted by subsection 74.351(s) and two additional depositions were permitted by subsection 74.351(u). *Id.* In addressing the phrase "notwithstanding any other provision," the court stated,

> The phrase notwithstanding any other provision of this section in subsection (u) references the reporting requirements imposed by the section and the discovery authorized by subsection (s). Nevertheless, subsection (u) limits the number of depositions allowed by subsection (s) to two; subsection (u) places this numerical limitation on the type of depositions permitted by subsection (s). The limitation is imposed in spite of the expert report requirements, and notwithstanding the lack of a numerical limitation on depositions in subsection (s). We conclude any oral depositions stayed under subsection (s) [13] are not authorized by subsection (u).

We agree with the reasoning in *Miller*. The correct construction of the statute turns upon harmonizing the language of subsections 74.351(s) and 74.351(u). The question is (1) whether subsection 74.351(u) should be read as providing that, notwithstanding the language in subsection 74.351(s) *limiting* discovery by a claimant during the stay prior to service of the expert report, subsection 74.351(u) *permits* two additional oral or written depositions to be taken of anyone by all claimants

---

ute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(k)(2) (Vernon 2005). Subsection 74.351(k)(2) states than an expert report served under section 74.351 shall not be used in a deposition, trial, or other proceeding. *Id.* If we were to hold that the term depositions refers only to depositions on written questions and depositions of non-parties consistently throughout section 74.351, because the term is so limited in subsection 74.351(s), we would also have to conclude that the same definition applies to subsection 74.351(k)(2), which we are unwilling to do.

12. Under the rule of *ejusdem generis*, "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." BLACK'S LAW DICTIONARY 535 (7th ed.1999).

13. The only oral depositions stayed under subsection (s) are oral depositions of parties and pre-suit depositions.

together, as Willes argues, or (2) whether it should be read as providing that, notwithstanding the language in subsection 74.351(s) *permitting* a claimant to take a number of different types of discovery during the stay prior to service of the expert report, including certain oral and written depositions, subsection 74.351(u) *limits* the permitted depositions to a total of two for all claimants together, as relators argue. Because the plain language of the statute permits either reading, we must determine whether only one reading is reasonable and consistent with legislative intent.

In promulgating the TMLA in 2003, the Texas Legislature listed a number of findings regarding the current state of health care in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 historical note (Vernon 2005) [Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884]. The findings indicated that the number of health care claims and the amounts being paid out in settlements and judgments had increased "inordinately" since 1995, affecting medical professional liability rates; there was, consequently, a serious problem in the availability and affordability of adequate medical professional liability insurance, creating a medical malpractice insurance crisis with a material adverse impact on the delivery of medical and health care and with both direct and indirect costs to patients and the public; and the adoption of modifications to the "medical, insurance and legal systems" would lower insurance rates for medical liability insurance. *Id.*

Because of these findings, the legislature stated that its purpose was to improve and modify the system by which health care liability claims are determined in order to:

 (1) *reduce excessive frequency and severity of health care liability claims through reasonable improvements and modification in the Texas insurance, tort, and medical practice systems;*

 (2) *decrease the cost of those claims* and ensure that awards are rationally related to actual damages;

 (3) *do so in a manner that will not unduly restrict a claimant's rights* any more than necessary to deal with the crisis;

 (4) make available to physicians, hospitals, and other health care providers protection against potential liability through the insurance mechanism at reasonably affordable rates;

 (5) make affordable medical and health care more accessible and available to the citizens of Texas;

 (6) *make certain modification in the medical, insurance, and legal systems in order to determine whether or not there will be an effect on rates charged by insurers for medical professional liability insurance;* and

 (7) make certain modifications to the liability laws as they relate to health care liability claims only and with an intention of the legislature to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law.

*See id.* § 74.001 [Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884–885] (emphasis added). We are also mindful of the former provisions of the Medical Liability and Insurance Improvement Act of Texas, which did not place any limitations on discovery. *See* Act of April 19, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2064, *repealed by* Act of May 16, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001 (Vernon 2005)) ("former article 4590i").

The legislature's express purposes in enacting the TMLA included the modification of the Texas tort practice system to decrease the cost of health care liability claims without unduly restricting a claimant's rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001. With the addition of subsections 74.351(s) and 74.351(u) to section 74.351, the legislature satisfied these purposes—the Act now stays discovery prior to the expert's report, but lifts the stay with respect to specified types of discovery. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s), (u).

Significantly, the only types of discovery not excepted from the stay in subsection 74.351(s) are the oral depositions of parties and pre-suit depositions. Subsection 74.351(s) expressly lifts the stay with respect to requests for disclosure, requests for production, interrogatories, requests for admission, depositions on written questions, and oral depositions of non-parties. The only limitations on the permissible forms of discovery for each claimant established by subsection 74.351(s) are those provided by the rules specifically referenced in that subsection, including, for example, rule 205's limitation of discovery from a non-party to a deposition on written questions, a request for production of documents with an oral examination, and a request for production without deposition. Thus, if subsection 74.351(u) permitted the claimants to take two oral depositions of parties in addition to the oral and written depositions of an unlimited number of non-parties and an unlimited number of depositions on written questions of parties permitted each claimant by subsection 74.351(s), the stay of discovery imposed by section 74.351(s) prior to service of the expert report would be effectively meaningless and the detailed articulation of permissible discovery in subsection 74.351(s) would be otiose.

We will not interpret a statute in such a way as to make any part of it meaningless. *See Ramirez v. Collier, Shannon, Scott, PLLC,* 123 S.W.3d 43, 48 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). We conclude that subsections 74.351(s) and 74.351(u) can be meaningfully harmonized only if subsection 74.351(s) is read as limiting each claimant's discovery prior to service of the expert report to the types of discovery permitted by the rules referenced in that subsection, and subsection 74.351(u) is read as further limiting discovery during the stay by permitting all claimants, collectively, to take not more than two depositions of the types permitted by subsection 74.351(s). We further conclude that only this interpretation of subsections 74.351(s) and 74.351(u) fulfills the stated purpose of the TMLA of holding down legal costs and thus malpractice insurance costs.

Accordingly, we hold that subsection 74.351(s) of the TMLA defines the types of permissible discovery excepted from the stay imposed prior to service of the expert's report and that subsection 74.351(u) restricts all claimants collectively to taking not more than two depositions of the types permitted by subsection 74.351(s) during the stay.

### Conclusion

Based on our interpretation of section 74.351, we conclude that the trial court abused its discretion in compelling relators to give deposition testimony. We conditionally grant the relief requested in relators' petition for writ of mandamus and order the trial court to vacate its order compelling relators to give deposition testimony. Mandamus will issue only if the trial court fails to comply.

Justice HANKS, dissenting.

GEORGE C. HANKS, JR., Justice, dissenting.

I respectfully dissent. I would affirm the order of the trial court and allow the party depositions to proceed. Subsection 74.351(u) allows a claimant, prior to filing the expert report, to take two oral depositions of *any witness* the claimant chooses. Subsection 74.351(u) provides:

> (u) *Notwithstanding any other provision of this section,* after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(u) (Vernon 2005) (emphasis added). The language "notwithstanding any other provision of this section" in subsection 74.351(u) means exactly what it says on its face: independent of any other subsection of section 74.351, "all claimants, collectively, may take not more than two depositions before the expert report is served." Going outside the subsection to interpret its effect renders the phrase "notwithstanding any other provision of this section" meaningless. Nowhere in subsection 74.351(u) does the Legislature state that (1) parties are immune from being deposed under this subsection or (2) the two depositions are limited to only non-parties.

For this reason, I would hold that the trial court's order was not a clear abuse of discretion justifying mandamus relief. Because the majority holds otherwise, I respectfully dissent.